# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES LENNON | CIVIL ACTION |
| v. | NO. 12-6701 |
| SHARON HILL BOROUGH, et al. | |

**Baylson, J.**                                                   **April 10, 2014**

## MEMORANDUM RE: MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff brings claims under Section 1983 and state law against police officers and the Borough Sharon Hill for events related to an altercation with police and Plaintiff's subsequent arrest and prosecution for assault, reckless endangerment and disorderly conduct. Plaintiff contends these charges were brought without probable cause to cover up a police assault. Defendants move for partial summary judgment.

### I.  UNDISPUTED FACTS & PROCEDURAL HISTORY

Defendants are the Borough of Sharon Hill, Police Chief Robert Tinsley, Police Officer Stephen Mummo, Police Officer John Scanlan, Police Officer Richard Herron, Police Officer Michael Attix, and Thomas Hendrick who was on medical leave from his job in the Borough of Sharon Hill Highway Department.[1]

Plaintiff was working at Malz Hardware Store on December 22, 2010. Defendant Scanlan entered the store to talk with Plaintiff about a series of complaints between Plaintiff and a neighbor. After Scanlan left the store, Plaintiff suffered a panic attack, and was laying on the floor in the back "electrical and bolt" room of the store where his employer, Art Lender, found him and called 911. Mummo heard the call on the police radio, and came into the store. Mummo found Plaintiff lying on the floor, breathing into a paper bag, and engaged in a "scuffle"

---

[1] Plaintiff has stipulated to dismissing claims against Scanlan and Hendrick. Accordingly, they are excluded from this analysis and the Court's references to "Defendants" or "individual Defendants."

with Plaintiff. Lender Dep. at 45:11-21. Shortly thereafter Tinsley, Herron and Attix entered the store and engaged in an altercation with Plaintiff.

Eventually, paramedics arrived and Plaintiff was taken to the hospital in an ambulance.[2] At the police station Herron, Attix, Tinsley and Mummo discussed the incident and decided to file charges against Plaintiff.[3] Herron drafted an affidavit of probable cause stating that Plaintiff hit Mummo in the chest, pushing him back against the wall, resisted police efforts to subdue him, hitting and kicking several police officers, and "the entire time [he] was yelling obscenities and was saying 'I'll kill you cops, I'm going to get all of you.'" Pl's Ex. C. Based on this affidavit a warrant was issued for Plaintiff's arrest. Plaintiff was charged with multiple counts of aggravated assault, simple assault, terroristic threats, harassment, recklessly endangering another person, and disorderly conduct.

The following day, Plaintiff returned to work where Herron arrested him.[4] Plaintiff was imprisoned and prosecuted on all charges. A bench trial commenced on October 12, 2011. Before the government concluded its case-in-chief, the parties reached a plea agreement where Plaintiff plead guilty to disorderly conduct and harassment, and the government petitioned the court for nolle prosequi on the remaining charges. Two weeks after this plea agreement Plaintiff had new counsel who appealed the guilty plea. The appellate court granted a new trial, and Plaintiff was acquitted of all charges after a bench trial. Pl's Ex. L.

Plaintiff brings a Section 1983 claim for excessive force and state law claims of assault and battery against Defendant Tinsley. Plaintiff brings claims under Section 1983 and state law for false arrest, false imprisonment and malicious prosecution against Defendants Tinsley,

---

[2] Plaintiff does not allege or provide any documentation of what he was treated for at the hospital. He was released the same day.
[3] Defendants testified that Tinsley was at the meeting and provided information used in the affidavit of probable cause, but did not participate in the decision to bring charges against Plaintiff.
[4] Scanlan drove the vehicle that transported Plaintiff to the police station.

Mummo, Scanlan, Attix, Herron, and Hendrick.  The Complaint also alleges a Monell claim against the Borough of Sharon Hill.  Finally, Plaintiff alleges state law claims of conspiracy and intentional infliction of emotional distress against Defendants Tinsley, Mummo, Scanlan, Attix, Herron, and Hendrick.  Defendants moved for summary judgment, with the exception of the claims for excessive for or assault and battery against Tinsley and the claim of malicious prosecution against Herron.

## II. DISPUTED FACTS

Plaintiff has introduced eyewitness testimony from his employer, Art Lender, that Plaintiff never hit, punched or threatened the police officers.  Lender Dep. at 46:21-47:1; 49:6-9; 53:9-16; 57:9-58:23.  Lender testified that after the police arrived, while Plaintiff was in the midst of a panic attack, Defendant Tinsley went over to Plaintiff "and started arguing with him," saying "fuck you and fuck your lawyer.  I ought to come over there and punch you in the face."  Lender Dep. at 53:18-54:12.  Then Tinsley "came across the aisle here toward us" and "swung at Mr. Lennon" about two times.  Lender Dep. at 54:18-55:3.  Lender did not believe the punches connected with Plaintiff.  Plaintiff testified that the first punch hit him in the face.  Lennon Dep. at 28:20-25.  Then "[t]he other officer said to get out" and Tinsley left the store.  Lender Dep. at 56:4-12.  That was when the medics arrived, evaluated Plaintiff and took him to the hospital.  Lender Dep. at 56:15-21.

Plaintiff also produced a video surveillance of the hardware store, but the altercation is not visible in the frame.  Plaintiff points to several images in the video that contradict the version of events as recounted in the affidavit of probable cause.  In Plaintiff's version of events, Tinsley verbally harassed Plaintiff and punched him in the face, and the individual Defendants then conspired to fabricate false charges against Plaintiff to cover up Tinsley's conduct.

Defendants concede there are disputed material facts on Plaintiff's claims against Tinsley for excessive force and assault and battery, and the claim of malicious prosecution against Herron. Defendants do not seek summary judgment on these claims.

### III.    ANALYSIS

A district court should grant a motion for summary judgment if the movant can show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A factual dispute is "material" if it "might affect the outcome of the suit under the governing law." Id. Under Rule 56, the Court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in favor of the non-movant. Id. at 255 (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970)).

**A. False Arrest and False Imprisonment**

Plaintiff contends Defendants fabricated material facts in the affidavit of probable cause in application for the arrest warrant to cover up Tinsley's assault. Plaintiff brings claims for false arrest and false imprisonment without probable cause. Defendants contend only Herron was the affiant, and he was able to rely on the facts relayed to him by Tinsley, Attix and Mummo.[5]

---

[5] Defendants also contend that a false arrest claim cannot stand if there was probable cause for any of the charges filed. Defendants point to Plaintiff's guilty plea to disorderly conduct as proof there was probable cause. But the Third Circuit has held that there is no presumption of probable cause based on a municipal court conviction that has been overturned. Montgomery v. De Simone, 159 F.3d 120, 125 (3d Cir. 1998). Since Plaintiff was eventually acquitted of the charge of disorderly conduct, this Court must independently determine whether the evidence presented shows a jury could find Defendants did not have probable cause to arrest, imprison and prosecute Plaintiff.

4

"[F]alse arrest and false imprisonment are essentially the same claim." Olender v. Twp. of Bensalem, 32 F.Supp.2d 775, 791 (E.D. Pa. 1999) (citing Gagliardi v. Lynn, 149, 285 A.2d 109, 111 (Pa. 1971) (finding "'false arrest' is synonymous with false imprisonment")), aff'd, 202 F.3d 254 (3d Cir. 1999). "To state a claim for false arrest under the Fourth Amendment, a plaintiff must establish: (1) that there was an arrest; and (2) that the arrest was made without probable cause." James v. City of Wilkes–Barre, 700 F.3d 675, 680 (3d Cir. 2012). Similarly, to bring a claim for false imprisonment, a plaintiff must show (1) that there was a detention; and (2) that the detention was unlawful. Id. at 682-83; see also Renk v. City of Pittsburgh, 641 A.2d 289, 293 (1994) (reciting the same elements for a state law claim of false imprisonment). The central question in both claims is whether there was probable cause to arrest and detain Plaintiff.

To establish that a warrant was issued without probable cause because the supporting affidavit included material misrepresentations or omissions, a plaintiff must show "(1) that the affiant knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant; and (2) that such statements or omissions are material, or necessary, to the finding of probable cause." Sherwood v. Mulvihill, 113 F.3d 396, 399 (3d Cir. 1997) (citing Franks, 438 U.S. at 171-72).

"[A]n arrest warrant issued by a magistrate or judge does not, in itself, shelter an officer from liability for false arrest." Wilson v. Russo, 212 F.3d 781, 786 (3d Cir. 2000). An individual officer who did not effectuate the arrest can be liable under Section 1983 for obtaining a warrant through material false statements that result in a constitutional deprivation. Lippay v. Christos, 996 F.2d 1490, 1502 (3d Cir. 1993).

In the affidavit of probable cause, Herron stated that Plaintiff punched and kicked police officers, and yelled "I'll kill you." Pl's Ex. C. These statements are directly contradicted by

5

testimony from Plaintiff and Arthur Lender, who witnessed the events. Lender Dep. at 57:9-59:5. This evidence gives rise to a genuine question of fact whether the statements in the affidavit were false. Excising the false statements, the affidavit does not support probable cause to arrest Plaintiff because testimony exists which contradicts all of the allegations that Plaintiff was physically or verbally aggressive. Accordingly, Plaintiff has produced sufficient evidence that a reasonable jury could find the warrant did not support probable cause to arrest and detain Plaintiff. The central question is whether Plaintiff can sustain a claim against the other officers who allegedly provided Herron with the false information in the affidavit.

"The Fourth Amendment places restrictions and qualifications on the actions of the government generally, not merely on affiants." United States v. DeLeon, 979 F.2d 761, 764 (9th Cir. 1992). "A governmental official violates the Fourth Amendment when he deliberately or recklessly provides false, material information for use in an affidavit in support of a search warrant, regardless of whether he signs the affidavit." Hart v. O'Brien, 127 F.3d 424, 448-49 (5th Cir. 1997) (finding against a county attorney who did not sign the affidavit, but "was the exclusive source of the inaccurate information" could be liable under Section 1983); see also United States v. Pritchard, 745 F.2d 1112, 1118 (7th Cir. 1984) ("[W]hile allegations that an informant, whose story was recited by an affiant, was lying are insufficient to require a Franks hearing, this principle does not apply when one government agent deliberately or recklessly misrepresents information to a second agent, who then innocently includes the misrepresentations in an affidavit.").

"As the Supreme Court noted in Franks, 'police [can]not insulate one officer's deliberate misstatement merely by relaying it through an officer-affiant personally ignorant of its falsity.'" United States v. Calisto, 838 F.2d 711, 714 (3d Cir. 1988) (quoting Franks v. Delaware, 438 U.S.

154, 164 n.6 (1978)). The affidavit of probable cause in Calisto stated an informant provided information to Officer Gilbride who relayed it to the affiant. Id. But Gilbride concealed the fact that he obtained the information from a Pennsylvania Crime Commission officer, who obtained it from another officer who was in contact with the informant. Id. (noting the police concealed the identity of the informant and the officer who was in contact with him to protect their source). The Third Circuit held that Gilbride could be responsible for intentionally omitting the sources of his information when relaying it to the affiant this information. Id. at 716 (finding the affidavit still supported probable cause when reading the omitted facts into it).

Herron testified that he drafted the affidavit of probable cause with information from "Officer Mummo, Officer Attix, and my observations." Herron Dep. at 92:5-8. Mummo testified that he met with Herron and Tinsley to discuss the incident and decide what charges should be brought. Mummo Dep. at 138:12-141:7. Both Herron and Mummo testified that Tinsley did not participate in the decision to bring charges. But Herron testified that he decided to charge Plaintiff with four counts of reckless endangerment and terroristic threats because Tinsley told Herron that Plaintiff's statements put him in fear of bodily injury. Herron Dep. 107:17-18:5. This evidence supports a finding that Mummo, Attix and Tinsley provided Herron with allegedly false information that was used in completing the affidavit of probable cause. Because Plaintiff has raised a genuine question of material fact whether probable cause existed to arrest and imprison him, Defendants are not entitled to summary judgment on Counts II and III.

**B. Malicious prosecution**

To prove malicious prosecution a plaintiff must show that: "(1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in his favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other

than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty." Johnson v. Knorr, 477 F.3d 75, 81-82 (3d Cir. 2007); see also Olender v. Twp. of Bensalem, 32 F. Supp. 2d 775, 791 (E.D. Pa. 1999) aff'd sub nom. Olender v. Rubenstein, 202 F.3d 254 (3d Cir. 1999) (applying identical factors for state law malicious prosecution). "Malicious prosecution differs from false arrest inasmuch as '[a] claim for false arrest, unlike a claim for malicious prosecution, covers damages only for the time of detention until the issuance of process or arraignment, and not more.'" Id. at 82 (quoting Montgomery v. De Simone, 159 F.3d 120, 126 (3d Cir. 1998)).

"A police officer can be held liable for malicious prosecution if he 'fails to disclose exculpatory evidence to prosecutors, makes false or misleading reports to the prosecutor, omits material information from the reports, or otherwise interferes with the prosecutor's ability to exercise independent judgment in deciding whether to prosecute.'" Cooper v. City of Chester, No. 11-5381, 2013 WL 925067, at *3 (E.D. Pa. Mar. 11, 2013) (quoting Milbourne v. Baker, No. 11–1866, 2012 WL 1889148, at *11 (E.D. Pa. May 23, 2012)).

Defendants contend the individual Defendants cannot be held liable for malicious prosecution, because they did not arrest or prosecute Plaintiff. But "a decision of a prosecutor, sentencer, or other court officials will only constitute an intervening cause if the decision is genuinely free from deception or coercion." Hector v. Watt, 235 F.3d 154, 164 (3d Cir. 2000) (finding the warrant "was not the result of a truly independent decision by a magistrate, but rather was contaminated and compromised by the officer's misinformation"). The Third Circuit reversed the grant of an officer's motion to dismiss because the complaint sufficiently alleged "an absence of probable cause for the initiation of the proceedings against her." De Simone, 159 F.3d at 124. Implicit in the holding is that police officers who initiate prosecution by arresting a

plaintiff without probable cause are liable for the resultant prosecution. Id; see also Jones v. City of Chicago, 856 F.2d 985, 994 (7th Cir. 1988) (finding Section 1983 liability against police officers who deliberately supplied misleading information, because that information influenced the prosecutor's decision to proceed to trial).

In Cooper police officers were denied summary judgment because the plaintiff produced evidence that the arresting officer "lied about the events leading to the shooting as a way to justify his actions." 2013 WL 925067, at *3. The officer who completed the affidavit of probable cause also "failed to disclose material information that contradicted [the arresting officer's] account of events." Id. This Court found the officers could be liable for initiating the prosecution through false statements and material omissions in the affidavit of probable cause. Id.

Here, Herron drafted the affidavit of probable cause, and executed the arrest warrant, which initiated Plaintiff's prosecution. Plaintiff also seeks to impose liability on Tinsley, Mummo and Attix for providing false statements in the affidavit of probable cause. Plaintiff further contends Defendant Mummo gave false testimony at Plaintiff's criminal trial. As discussed above, Plaintiff has introduced sufficient evidence to raise a genuine question of fact whether the account of the incident in the affidavit of probable cause and Mummo's trial testimony were truthful. Viewing the evidence in the light most favorable to Plaintiff, a jury could find that it shows Defendants acted maliciously, filing false charges against Plaintiff to cover up Tinsley's assault. Finally, Plaintiff has introduced evidence that he was acquitted of the charges, and that he suffered a deprivation of liberty. Accordingly, Defendants are not entitled to summary judgment on this claim.

**C. Monell Claim**

Under Monell v. Dep't of Social Serv., 436 U.S. 658, 694 (1978) "a municipality may only be liable for the torts of its employees in one of three ways." McGreevy v. Stroup, 413 F.3d 359, 367 (3d Cir. 2005).

> First, the municipality will be liable if its employee acted pursuant to a formal government policy or a standard operating procedure long accepted within the government entity; second, liability will attach when the individual has policy making authority rendering his or her behavior an act of official government policy; third, the municipality will be liable if an official with authority has ratified the unconstitutional actions of a subordinate, rendering such behavior official for liability purposes.

Id. "Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." Pembaur v. City of Cincinnati, 475 U.S. 469, 481-83 (1986). A custom is an act "that has not been formally approved by an appropriate decisionmaker, but that is so widespread as to have the force of law." Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 584 (3d Cir. 2003) (reversing the district court's grant of summary judgment). A plaintiff bears the burden to show the existence of a policy, and that a policymaker is responsible for the policy or has acquiesced to the custom." Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990).

Courts cannot "assum[e] that municipal policymaking authority lies somewhere other than where the applicable law purports to put it." City of St. Louis v. Praprotnik, 485 U.S. 112, 125 n.1 (1988). The Supreme Court found a county prosecutor was a policymaker because state law authorized the county prosecutor to issue instructions to county officials on carrying out their official duties. Pembaur, 475 U.S. at 484. But the Court held the directors of city agencies in Praprotnik did not have authority to establish employment policy for the city because the city

10

charter delegated that authority exclusively to the Civil Service Commission. Praprotnik, 485 U.S. at 130.

The Third Circuit has held as a matter of Pennsylvania state law, a township police chief is not a final policymaker absent a delegation of that authority by the township supervisors. Santiago v. Warminster Twp., 629 F.3d 121, 135 n.11 (3d Cir. 2010) (citing 53 Pa. Stat. Ann. § 66902 (vesting authority over the "organization and supervision" of the local police force in the township supervisors)) (affirming the dismissal of the plaintiff's claims). Courts in the Third Circuit look to the delegation of policymaking authority in local law to find police chiefs are policymakers for Monell purposes. See, e.g., Gleeson v. Robson, No, 3:C-V02-1747, 2005 WL 1210948, at *13 (M.D. Pa. May 6, 2005) aff'd sub nom. Gleeson v. Prevoznik, 190 F. App'x 165 (3d Cir. 2006) (finding the regional police commission "delegated its power to create law enforcement policies to" the chief of police); Hernandez v. Borough of Palisades Park Police Dep't, 58 F. App'x 909, 913 (3d Cir. 2003) (holding New Jersey law delegated authority to each municipality's chief of police to establish operating policies).

Plaintiff argues that Tinsley "established a policy in the borough of having a citizen who annoys him arrested and prosecuted without probable cause." Pl's Br. at 43. Plaintiff has not produced any evidence that this was a policy or custom. There is no evidence that it was standard operating procedure or a widespread practice to arrest citizens who annoyed Tinsley.

Plaintiff also contends that Tinsley is a policymaker because he is the Chief of Police. Plaintiff has not produced any evidence or cited to any law showing Tinsley was authorized to establish policies for the Borough of Sharon Hill. Since Plaintiff has failed to point to any evidence supporting the existence of a policy or custom that caused the deprivation of his

constitutional rights, or to any authority showing Tinsley was a policymaker, the Borough of Sharon Hill will be granted summary judgment.

**D. State Law Claims**

**1. Intentional Infliction of Emotional Distress**

The Pennsylvania Supreme Court has not clearly recognized a cause of action for intentional infliction of emotional distress, but has "cited the section [46 of the Restatement of Torts] as setting forth the minimum elements necessary to sustain such a cause of action." Taylor v. Albert Einstein Med. Ctr., 754 A.2d 650, 652 (Pa. 2000). The Pennsylvania Supreme Court held that if the Commonwealth did recognize the tort, the "existence of the alleged emotional distress must be supported by competent medical evidence." Kazatsky v. King David Mem'l Park, Inc., 527 A.2d 988, 995 (Pa. 1987). In addition, "a plaintiff must suffer some type of resulting physical harm due to the defendant's outrageous conduct." Swisher v. Pitz, 868 A.2d 1228, 1230 (Pa.Super. Ct. 2005). A plaintiff must show that the defendant's "conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Field v. Phila. Elec. Co., 565 A.2d 1170, 1184 (Pa. Super. Ct. 1989).

The Superior Court of Pennsylvania affirmed the grant of summary judgment to a defendant because a plaintiff "alleged that he suffered bodily harm due to his firing but failed to oppose the summary judgment motion with medical evidence supporting this claim." Hunger v. Grand Cent. Sanitation, 447 Pa. Super. 575, 585, 670 A.2d 173, 178 (1996) ("For that reason alone, the trial court's dismissal of this count was proper."). Similarly, Plaintiff here has alleged physical injury due to being struck by Tinsley, but has not produced any medical evidence of his alleged emotional injuries. Plaintiff has not provided copies of his hospital records, any evidence

regarding emotional injuries resulting from his arrest and imprisonment, or any expert medical reports supporting his claim.[6] Since Pennsylvania courts require competent medical evidence to sustain a claim for intentional infliction of emotional distress, Defendants are entitled to summary judgment on this claim.

**2. Conspiracy**

Plaintiff alleges Tinsley, Mummo, Attix and Herron agreed to lie about the December 22, 2010 incident in the affidavit of probable cause to cover up the assault against Plaintiff. "To prove a civil conspiracy, it must be shown that two or more persons combined or agreed with intent to do an unlawful act or to do an otherwise lawful act by unlawful means." Thompson Coal Co. v. Pike Coal Co., 412 A.2d 466, 472 (Pa. 1979). The plaintiff must show an intent to injure, and that the conduct was without justification. Id.

In Thompson Coal the Supreme Court of Pennsylvania upheld summary judgment for the defendants because the alleged conduct was consistent with acting for legitimate business interests, and there was no evidence of malice. Id. Judge Gardner of this Court granted summary judgment to a chief of police where there was no evidence showing that he was present or otherwise involved in the alleged conduct against the plaintiff, and the evidence showed that he was not consulted or made aware of the details of the incident until after it occurred. Zumbado v. City of Allentown, No. 07-02459, 2009 WL 310236, at *10 (E.D. Pa. Feb. 6, 2009). Accordingly, no evidence supported a finding of an agreement or "an intent to do an unlawful act." Id.

A plaintiff did state a claim for conspiracy under the Federal Torts Claim Act, applying state tort law, against federal Transportation Safety Administration employees for falsely

---

[6] Plaintiff testified that has been treated for his panic attacks, but that his treatment did not change after the December 22, 2010 incident and subsequent arrest and prosecution. Lennon Dep. at 94:4-25.

accusing the plaintiff of assault.  Pellegrino v. U.S. Transp. Sec. Admin., 855 F. Supp. 2d 343, 358 (E.D. Pa. 2012), appeal dismissed (July 19, 2012).  The plaintiff alleged that after she was searched in a private screening room, two TSA agents remained in the room while she re-packed her belongings, and emerged twenty minutes later to re-detain the plaintiff.  Id. at *351-52.  The TSA agents called Philadelphia police and accused the plaintiff of assault, giving allegedly false accounts of the interaction in the private screening room.  Id. at 352.  As a result of these allegations, the plaintiff was arrested, imprisoned and prosecuted on charges of assault, reckless endangerment and making terroristic threats.  Id. at 352-53 (noting all the charges but two were dismissed or abandoned, and plaintiff was acquitted of the two remaining charges).  Chief Judge Joyner of this court found the complaint sufficiently alleged an agreement between the TSA agents based on the allegations that they discussed the incident in the private screening room and decided to bring false charges against the plaintiff.  Id. at *358.  The plaintiff also adequately alleged an overt act done in pursuance of the agreement when the TSA agents called the police and pressed allegedly false charges.  Id. at 358-59.  "Because Plaintiff adequately pled claims of malicious prosecution and false arrest/imprisonment through the misconduct of TSA employees, Plaintiff has therefore also pled a charge of civil conspiracy."  Id.

This case is strikingly similar to Pellegrino.  Plaintiff has produced evidence that Defendants met, discussed the case and agreed to bring false charges against Plaintiff.  Mummo testified that the met with Herron, Attix and Tinsley to discuss "the incident, what if any, charges would be filed, and who were the victims."  Mummo Dep. at 138:12-23.  Similarly, Herron testified that he agreed with Mummo and Attix to file charges against Plaintiff.  Herron Dep. at 91:7-12.  This is evidence of an agreement among two or more Defendants.

14

Defendants contend this meeting cannot support an finding of conspiracy, because officers must be able to meet and confer prior to charging a suspect.  But Plaintiff has produced some evidence questioning whether Defendants had probable cause to arrest him for the crimes charged.  As in Pellegrino Plaintiff has submitted evidence that indicates Defendants acted with malice by applying for a warrant to arrest Plaintiff on the allegedly false charges to cover up police misconduct.  Unlike the police chief in Zumbado who learned of the events after the fact, Tinsley was involved in the incident, committed the alleged assault that Plaintiff contends the arrest warrant sought to cover up, and was present at the meeting where Defendants agreed to press charges.  This raises a genuine question of fact whether Tinsley participated in the agreement to bring false charges against Plaintiff.  Since Plaintiff had produced sufficient evidence of false arrest, false imprisonment and malicious prosecution, the alleged conduct was without justification.  Accordingly, Defendants' motion to dismiss this claim should be denied.

**E. Qualified Immunity on Counts II, III, and IV**

Government officials performing their discretionary duties are entitled to qualified immunity unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

On a summary judgment motion the court must make "a legal determination about the existence of a right, and whether it is clearly established, [and then must] determine whether the facts on the record are such that a jury could conclude that the clearly established right was violated." Wilson v. Russo, 212 F.3d 781, 786 (3d Cir. 2000).  But "if officers mistakenly conclude that probable cause is present" they are immune from suit if their mistake was reasonable, in light of clearly established law and the information the officers possessed at the time. Anderson v. Creighton, 483 U.S. 635, 641 (1987).

Defendants contend the individual Defendants are entitled to qualified immunity on the false arrest, false imprisonment and malicious prosecution claims.  As discussed above, Plaintiff has produced sufficient evidence to allow a jury to find Mummo, Attix, Herron and Tinsley provided materially false information in the affidavit of probable cause, seeking charges against Plaintiff that were not supported by probable cause absent the materially false statements.  Longstanding precedent in <u>Franks</u> and its progeny clearly establish that providing false information or making material omissions in an affidavit of probable cause violates Fourth Amendment rights.  <u>See</u> <u>supra</u> Section III.A.  The contradictory accounts of the altercation with Plaintiff demonstrates there was no question of mistake if a jury credits Plaintiff's account over that of the Defendants.

Plaintiff has not produced any evidence that Scanlan and Hendrick were involved in the incident, provided false information in the affidavit, or participated in the decision to bring false charges against Plaintiff.  In a footnote to Plaintiff's brief, Plaintiff asserts he "forwarded a stipulation to Defendants' counsel to withdraw all claims against" Scanlan and Hendrick.  Pl's Br. at 1 n.1.  No stipulation or dismissal has been filed on the docket.

## IV.   CONCLUSION

Defendants' motion for summary judgment will be granted as to Defendants Scanlan, Hendrick and the Borough of Sharon Hill.  Defendants' motion for summary judgment as to Defendants Mummo, Attix, Herron and Tinsley on Plaintiff's claims of false arrest, false imprisonment, conspiracy and malicious prosecution will be denied.  Finally, Defendants' motion for summary judgment on Plaintiff's claim of intentional infliction of emotional distress will be granted.

O:\CIVIL 12\12-6701 lennon v. sharon hill boro\12cv6701.memo.sjm.docx